NO.8061.    **8061** ~~T~~~~ATE OF~~ LOUISIANA

CLARENCE L. BOURGEOIS

.COURT OF APPEAL

VS

MARCELIN JONES, ET AL.    PARISH OF ORLEANS

--------------------

**8061**

## OPINION.

By his Honor John St. Paul.

On April 24th 1911, plaintiff brought suit against Marcelin Jones for $1493.10 due him since January 9th 1910, and obtained judgment there*for* on April 8th 1912. Whereupon he took out a writ of Firi Facias under which the sheriff seized and offered for sale a half interest in certain lands; which half interest was appraised at $100, and was duly adjudicated and sold to plaintiff on August 12th 1914 for $425.

On Sept---- 1915, plaintiff filed this suit to have cancelled (as being simulated and fraudulent) two certain mortgages, one for $125 dated April 22nd 1911, and one for $600 dated April 24th 1911; both nominally in favor of Toussaint Jones, a brother of said Marcelin Jones. To which suit the widow and heirs of Joseph Jones, a deceased son of Marcelin Jones, have been made parties as claiming ownership of the aforesaid $600 mortgage. As to the $125 mortgage, the evidence shows that it has been paid and thus vanishes from the case; so that it need be mentioned no further.

### I.

L. The sheriff's sale to plaintiff is now attacked, but only indirectly, that is, it is suggested in argument that it is not valid. But even so, the defendants have in

584

reconvention asked (not in the alternative only, but absolutely) that they be given judgment against plaintiff for the amount of said mortgage, as having been assumed by him as part of the purchase price at sheriffs sale; and they close their brief in this court with a like prayer.

Accordingly defendants are estopped from questioning the validity of the sheriffs sale, since one who receives or claims the price of a sale or any part thereof necessarily cannot be heard to deny the sale itself, on the validity of which he must depend in order to claim the price. Massie vs Brady, 41 An 553; Dowling vs Gally, 30 An 328; Williams vs Springfield, 15 An 535; Sittig vs Morgan, 5 An 574; Headen vs Oubre, 2 An 142.

2. Moreover the validity or invalidity of the sheriff's sale is quite immaterial for the purposes of this case, wherein the judgment merely "annuls the mortgage and orders the cancellation of the inscription thereof", See the Petition of Appeal, Paragraph I.

For it cannot be denied that plaintiff is at least a judgment creditor of Marcelin Jones; and hence, even as such, has the undoubted right to attack any contract made by his debtor in fraud of his rights. C. C. 1970, 1972, 1973.

II.

The only remaining question of law herein is whether plaintiff assumed payment of the aforesaid mortgage as part of his bid at sheriffs sale.

But there is a difference between assuming payment of a mortgage as part of the price of a sale, and merely buying for a fixed price property that is actually or apparently subject to a mortgage, but without assuming the payment of such mortgage. In the first case there arises a "stipulation pour autrui," a new and independent contract, standing or falling by itself and giving rise to consequences wholly beyond the original obligation. Scionneaux vs Waguespack, 32 An 283, 287, 288. Hence the party is bound personally and absolutely by his new undertsking. In the second, "a purchaser of property subject to mortgage x x x acquires it subject only to mortgages actually existing thereon; x x x he may oppose all defenses which the mortgagor would have opposed, x x x and the mortgagor cannot deprive him of these by waiver or otherwise." State vs Citizens Bank, 33 An 705, 708.

Now sheriffs sales may be made either in the one way or in the other; Balfour vs Chew, 4 Martin N. S. 154. *Loucks vs Union Bank, 2 an 617.* If the purchaser is <u>required</u> <u>to</u> <u>assume</u> the payment of prior mortgages he is (or should be) personally and absolutely bound by his undertaking to do so; and then he can not

set up any supposed invalidity in the mortgage, since it is part of the price which he promised to pay: Trudeau vs McVicar, I An 427. If on the other hand he simply purchased subject to prior mortgages, then he is not personally bound and may show that such prior mortgages are nullities; Peets vs Wilson;19 La 478, 481.

This much also is clear, that if a bid at sheriff's sale must in all cases exceed the sum total of all the fradulent and simulated mortgages with which a debtor may see fit to load his property, then a sheriff's sale becomes an impossibility; for the debtor has it always in his power to make it so, by placing upon his property simulated mortgages in excess of its value. But that is not the law; 19 La 478.

### III.

In this case we have the sheriffs proces verbal before us. It shows that the sheriff simply read the mortgage certificate as required by law, and then called for bids; whereupon plaintiff bid $425 for the property (appraised at $100), for which sum it was adjudicated to him. Plaintiff did not assume the payment of this or any other mortgage whatever, and hence merely took the property subject to such mortgages as might validly exist thereon. If such mortgages as appeared against the property were null, or had been extinguished , he has the right to show this if he can.

On the question of fact, the trial judge thought, and so do we,  that the mortgage was a pure simulation. It was executed on the very day plaintiff ~~brought~~ brought his first suit; and from that day to this (certainly until June 25th 1919) nothing whatever has been either paid or demanded at any time on account of either principal or interest, although the supposed owners thereof are in needy circumstances. And the Notary before whom the mortgage was passed testified that the mortgagor came to him with the nominal mortgagee, his brother, declaring that he wished to place a mortgage upon the property in order to protect it against the alleged unfounded claim of some country storekeeper (plaintiff); that the mortgagor himself retained the mortgage note and left the office with it in his possession; that the mortgagor's deceased son, Joseph Jones, heard his father's statement and signed the act of mortgage as a witness (as the act itself shows).

Opposed to this is the testimony of the Mortgagor that he owed his son money for work done some years before, at $1.50 a day, none of which had ever been paid; that his son was clamorous for his money because he needed it, and having no money he gave his son this mortgage (which the son signed as witness); that he told the Notary what he wanted to do, and the notary gave the note to his son. That

the amount of $600 was not figured out but just guessed at; "I said: He worked long enough for me to pay him $600. I will make a mortgage for $600."

Also the testimony of the son's widow: That she once saw the note in the possession of her husband, and that after his death it was handed to her by the mortgagor himself (who claims to have recovered it after his sons' death from a woman with whom her son boarded).

Even apart from the testimony of the Notary we believe this mortgage to be simulated; and with that testimony we feel quite certain that such is the case.

The judgment appealed from is therefore affirmed.

Judgment Affirmed.